Next case on calendar for argument is Juarez Zelaya v. City of Los Angeles. Good morning, Council. Good morning, Your Honors. My name is Brian Chang. I represent the respondents in this, I mean, I represent the appellants in this case, the City of Los Angeles, Officer Hunt and Officer Richmond. Your Honors, the City certainly sympathizes with Ms. Zelaya and the passing of Mr. Cedillo is undeniably a sad event. This appeal is not about the police officer's conduct and it's not about the merits of the case. This appeal is about the fairness of the judicial system. It's about a judge exhibiting bias during a jury trial in front of the jury. When a judge says things like calling a witness's testimony pathetic in front of the jury, when a judge says things like you're so in the bag to a city's expert witness, Your Honor, I would submit to you that if an attorney did that, if an attorney called an opposing witness pathetic, if an attorney said that an opposing expert witness was so in the bag, that attorney would be admonished at a minimum, possibly disciplined, possibly held in contempt if he continued to make such comments. A judge running a jury trial should not be held to a lower standard than an attorney. And this particular judicial officer, Your Honors, he has done this before. In the 2013 case, Kretschman, which the appellees pointed out, your colleague, Judge Randy Smith, wrote an entire concurring opinion questioning this judge's conduct during that jury trial. But the argument there was that he was favoring the police. So, I mean, it seems like he's an equal opportunity commentator. The reason the appellees chose to point out that case was for that reason, that they wanted to show that he does not have an inherent bias for or against the police. But isn't that point made, though, if the comments are equally distributed? So, what does that do to your allegation of bias, then? Right. So, we're not talking about an inherent bias. We're talking about a bias during this particular jury trial. So, what the Kretschman case shows and what Judge Randy Smith's opinion shows is that once this district court judge determines what he believes should be the correct findings that the jury makes, then he has a tendency to conduct the jury trial in a way that the jury makes those findings. So, is your argument that he basically lacks patience, that once he hears enough of the evidence before all the evidence is in, he makes up his mind and then he starts engaging in improper statements and conduct? Well, lacking patience, at least, Your Honor, at a minimum. But these comments that the judge made in our case, in the case at hand, went beyond just showing impatience. It went to the... So, many of the cases cited by the appellees dealt with a judge showing annoyance towards counsel. In this case... Or sarcasm. Correct. All of that. Correct. Towards counsel. Yes. In this case, in the case at hand, this judge showed... This judge's comments went to the credibility of witnesses. It went to the findings of fact that are supposed to be left for the jury. What finding of fact did the judge, in your opinion, influence? So, this judge continually stated to the jury what... And he used the word we, what we saw. Well, he was sitting there. He saw the evidence as well, correct? Right. So, he... So, he could comment on what was presented in the courtroom, correct? Yes, but it is the jury's job to make their decision as to what the video shows. But we've said that the judges are entitled to flesh out the evidence, if there are questions that the judge thinks were not asked, that would be helpful to the jury. So, the judge is not merely a spectator in this process. So, why should we say that the judge exhibited reversible bias in this case? It's all a matter of degrees, Your Honor. In this case, this judge's comments reached a point where he was making findings of credibility, findings that went towards the ultimate findings of fact that are left for the jury. And he made those comments in the presence of the jury, which certainly would influence them. And... So, what case do you have? What's the strongest case you have to support your argument that this judge, the comments that this judge made are reversible error? What's your strongest case in this circuit that supports your view? In this circuit, the strongest case would be Mayhew. If Your Honors would be willing to consider other circuit cases, the strongest, the case that's most similar to this case is Revis from the Second Circuit. Otherwise, Mayhew is the one that you would hang your hat on? If you're going to only look at this circuit's cases, yes. That's the strongest Ninth Circuit case you've got?  Mr. Chang, can I ask you a couple of questions about how we handle this kind of behavior by the district judge? One is what appellate courts should expect by way of preservation of these issues? Because as near as I could tell from the trial transcript, there was no objection to any of these until the very last expert started with an F. I've forgotten his name. And then we have the motion for a mistrial. How do you think this was sufficiently preserved in the district court? I'm going to get second to a question of harmless error, but let's start with preservation. Sure. In the Reinhart case, that opinion explained that you don't need to make an objection to each one of a judge's statements if there is a notice, an opportunity to be heard on the issue of a new trial. In this case, a written motion for a new trial was made. Briefs for both sides were submitted. It was after the verdict? After, yes. So when there is that type of notice and opportunity to be heard on the issue of a new trial, then the objections don't have to be made at the time of the statements. Well, how broadly do you think that rule applies? That's not the rule for most evidentiary problems, right? So if that rule applies, then the standard of review here would be abuse of discretion. If your honors decide that it does not apply, the standard of review here would be plain error. Well, there was a motion for a mistrial made after the city's expert testified, right? Yes, oral motion for mistrial. But that's the only objection. There weren't any objections made with regard. I think that you're challenging the court's comments in about what, four or five out of the 13 witnesses who testified at the trial? That's right. Okay. But there were no other contemporaneous objections to the pathetic comment or he's so in the bag? The so in the bag comment was directed towards Mr. Flossie. Okay, so that was the basis for the mistrial motion when the court made that comment. Along with other comments he made during Mr. Flossie's testimony. Yeah. Such as the court making the finding, that really is up to the jury, making the finding that Mr. Cedillo was in so much pain. And he repeated that comment as well about how much pain Mr. Cedillo was in during other witnesses' testimony. But there were no contemporaneous objections made during those other questions? That's correct. Okay. I would have thought, and I'll be interested in plaintiff's thoughts on this as well, that in this kind of a situation, your real problem is with a cumulative effect of these. It might be possible to overlook one comment, but you're in the wrong line of work with Officer Hunt or maybe one of the others. But this adds up. And it's not easy to make a motion for a mistrial based on judicial bias during a trial. But I'm looking for your guidance for us from case law about how we should approach this question of preservation for these kinds of actions by a is the fairness of the trial. So if your honors decide that those objections were not preserved, then what we have here is a plain error standard of review. It's not that your honors, that this court cannot review it. It's just a different standard of review. For both plain error and abuse of discretion standard review, the paramount issue is the fairness of the trial. But you agree that when the mistrial motion was made, it was made solely on the basis of he's so in the bag. There wasn't another explanatory justification that your honor were really objecting to the manner in which you're constantly questioning the city's witnesses in a way that signals to the jury that you don't believe their testimony. That's correct. We made those arguments in the motion for a new trial judgment, notwithstanding the verdict. Counsel, I have the Mayhew case up and I'm curious what language in Mayhew specifically you're relying upon to support your argument. The Mayhew case was, could you tell me the page that you're relying on and the specific language you're relying on to support your argument? Okay. Yes, at 459, so the site is 569 F 2nd, 459. Correct. What's the pen site? You said 459? 459 is the citation, 9th circuit, 1977. And the pen site would be 471 to 472. 471 to 472. That's where the court found in essence the district judge was giving the plaintiff a personal character reference, right? In his closing instructions to the jury. Yes. And commenting directly on credibility. The credibility, right. So in the case at hand, the judge's comments cumulatively did affect the credibility of, they all went to the credibility of the city's witnesses. That basically the judge did not find these witnesses credible. He made these comments in the presence of the jury, which the city argues influenced the jury. And especially influenced the jury, inflamed them to a point where they awarded the excessive damages that were awarded here. Mr. Cheng, can I ask you a question that is important to me here at least? And that is the role that harmless error analysis might play here. We know that where a judge has a financial interest in a case, going back to the 1920s in Toomey, that's treated as a structural error, not subject to harmless error. And there are a lot of, harmless error is almost always available. But I'm wondering if a trial judge has abandoned his or her role as a neutral referee over the trial, and at least gets to a certain point in misconduct and commentary. Should we treat that as a similar structural error, or otherwise impose a, basically dispense with harmless error analysis and say we need to just send this back for a new trial? Well, we don't know why this judge did what he did in this case. There's certainly no evidence that there's any financial stake in it. I'm looking for comparisons to other situations where a party has a pretty good argument that they didn't get a fair trial. And then in those cases where it was found to be harmless error. But see, in this case, the judge's comments went directly to the credibility of witnesses and directly to the factual findings that a jury is supposed to make. I understand you want to say this couldn't possibly have been harmless. I'm just wondering, I'm trying to get the issue out on the table as to whether we would even need to ask that question. If a judge has shown sufficient partiality and bias in a trial. I don't need you to freestand, freelance, freestyle in response. If you haven't thought about it, don't worry about it. Look, counsel, I wanted to finish my questioning on the Mayhew case. So looking at the language there, we concluded that the comment went too far because the district court went into a detailed character analysis of one of the parties. I think it was Mr. Mayhew. Yes, right. And so it articulated a number of positive attributes. And we said in there that some of the traits were not supported by the evidence. So don't you see that as a little different? It certainly is a little different, Your Honor. As you know, and as we attorneys now know, there are very few cases out there that actually find, especially at an appellate level, judicial misconduct worthy of reversal. That's why, if Your Honors would be willing to look outside of the Ninth Circuit, the Revis Second Circuit case is the most similar case to ours. And the most similar case with regards to what the judge actually said. Because in the Revis case, the judge said things like, he thought that one side was making up a story. And that's what the judge in this case accused Officer Hunt of doing as well. He said, it's a story you're coming up with convenient for the purposes of trial. So yes, if Your Honors want to stick to the Ninth Circuit, admittedly, there are not a lot of cases out there finding reversal that result in a reversal based on judicial misconduct. With the presiding judge's permission, could you turn to the remediator question? I didn't see that argument very well developed in your briefs as to why this case is not worth $13.5 million. Right. Of that $13.5 million, $6 million went to pain and suffering. $6 million was for pain and suffering. Of Mr. Cedillo before he passed. That in particular, we believe, was caused by the judge's comments inflaming the jury. And the judge's comments telling the jury that he found that Mr. Cedillo was in a lot of pain. And he repeated those comments throughout the trial for various city witnesses. So that finding in particular is excessive, we believe. The $1.5 million to Ms. Zelaya for wrongful death, we also believe is excessive based on her rather limited relationship with Mr. Cedillo. She had not seen him since she was eight years old. She did not know he was homeless. She did not attend his funeral. Counsel, what do we do with the instruction that the judge gave the jury that any comments by the judge were not to be considered as revealing his view of how the case should be decided? Do we disregard that? I believe that it's not a matter of disregarding it. It's a matter of whether your honors believe that that instruction is sufficient to cure the judge's various comments made throughout the course of the trial. We presume that the jury follows the instruction. So why wouldn't we say that that cured any statements that were made? Right. It's again, it's a matter of degrees. Your honor, I would point you again to Mayhew and to the Rivas case where that specific issue was presented to the appeals court. And the court found that based on the totality of the judge's comments made during the trial, the jury instruction was insufficient to cure it. All right. Thank you, counsel. You've exceeded your time. We'll give you a minute for rebuttal. Thank you. Yeah. Good morning to all of you. My name is Dale Gallipo. I'm representing the appellee and also the plaintiff in the underlying action. I want to make a few comments. And of course, I want to address any questions any of you might have. Could you work into your comments, the response to my question regarding the damages? I will. I will, Judge Common. So I think it's important to understand what the ultimate issues in the case were. Because I believe a fair reading of the record is the judge did not comment on any of the ultimate issues in the case. And I'll tell you why. The real issue in the case is whether the prone restraint after he was handcuffed and hobbled, particularly the second prone restraint, which lasted another three minutes after he was unconscious for 11 or 12 minutes, was excessive or unreasonable. A secondary issue was whether the LAPD had sufficient training to their officers regarding the risk of prone restraint, positional and restraint. The city isn't really contesting that. It seems to me they're putting their eggs in one basket, which is they didn't get a fair trial. I mean, we had a battle of the experts on the cause of death. Jury ruled in your favor. We have to presume that the jury credited your experts over theirs.  But I think the reason it's important, Judge Common, when you look at the two cases cited by the appellant, the Mayhew case, which Judge Rollinson, it's so different. In fact, it's the only case one could find in the Ninth Circuit that they reversed a jury decision. And in that case, as Judge Hamilton said, they literally gave a glowing character reference to the plaintiff at the end of the case, had it transcribed and sent to the jury. It's always possible to distinguish these cases factually. They are rare. But I have to tell you, Mr. Gallipo, I've been doing this a while, too. All of us have for decades now. Speaking for myself, I have never seen this sort of intervention by a presiding judge on the critical issues of credibility and his view of the video evidence. And it would be helpful to me if you could point us to comparable conduct that appellate courts tolerated. Well, we cited a whole group of cases where there was conduct. But what I am trying to... I mean, they're easy to distinguish. This kind of behavior, fortunately, is very rare in the federal court system. And I'd like you to direct us to, as the counterpart of Judge Rollinson's earlier question to defense counsel, what are your best cases for saying that we should tolerate this kind of intervention by the district judge? Well, they would be the cases we cited. To be honest with you, the point that I'm trying to make is I think... I take it you don't want to answer that question directly. I can. I am sorry, Your Honor. It's not that I don't want to answer it. The cases that we cited, and I don't have them in front of me, the Schott case, for example, the Mostella case, and others where there were, as Judge Rollinson said, there was clarifying questions. There were skeptical questioning. There were sarcastic remarks made by the judge. Annoyance. Things of that nature. By the way... We all know that happens. I'm talking about comments directly on the credibility of key witnesses with the comment, pathetic. You are so in the bag. You're in the wrong line of work if you were afraid of this guy. You saw what we didn't see. Those are just extraordinary comments from the trial judge. That's what I am trying to address. If you just give me a moment, because I understand your concern. I do. I, like you, have been in many trials and understand the concern. But the point I was trying to make is, as has been pointed out, this judge only questioned four out of 13 witnesses. The main defendant, Officer Richman, who was on the back the entire time, he never questioned at all. The only time he questioned Hunt was before the prone restraint. I think this is very important to understand. The prone restraint and the death happened 15 minutes later. He was questioning him as to why the man was taken down to the ground. Because he was handcuffed behind his back. He hit his head on the curb. Because the video looked that he was cooperative up to that point. And the officers started saying that he was being resistive and kicking them and attacking them, although they later admitted he was without shoes on and never landed a kick. So the judge felt that... Part of the problem, though, was that the video doesn't show any of that because of the positioning of the cameras with the gas pumps and cars in the way. And then on the body camera, apparently they were too close. It's exactly true. So that's what the judge was doing. He was clarifying where did that happen. And he was giving the witness an opportunity to respond. So I get what you're saying, Judge Hamilton. But I also want to say that that pathetic comment, although I'm not a fan of it, was not made to the witness. If you look carefully at the transcript, the witness had been excused and the judge asked counsel, do you have any other witnesses? We were 20 minutes after lunch with the jury supposed to be there for three more hours. And defense counsel said, we have no other witnesses. What do you think that was the pathetic was referring to? That they have no other witnesses. And the jury was supposed to be here for another two or three hours. And the judge has to send them home. You don't think that was? Go ahead. Oh, I was going to say, what about the comment that he made to the officer showing his dissatisfaction with the officer's answers to his question? And then he dismisses them by saying, basically, go, get out of here. I get all that. I am not trying to say what the point that I'm trying to make in terms of the prone restraint after he was hobbled. No questions were asked of that. No questions regarding training. No questions regarding cause of death. No questions regarding damages at all. The judge, for whatever reason, was hung up on what happened right before he was taken to the ground. But because the video did not show what the officers were saying it showed. And maybe it's because it was off camera. They said he was biting and spitting and attacking them. And it didn't appear that way. So if I could put words in your mouth. It sounds like you're making a harmless error argument here. Yes, I am. And given Judge Tallman's point earlier about this looking like a battle of experts. We've got inconclusive video. We've got officers test giving aversion. They have their credibility issues and so on. How do we say this is harmless? That's what I'm trying to get to. Because if you look at the real issues the jury had to decide. And most of the evidence was undisputed and admitted. The fact that he was handcuffed and hobbled during the first prone restraint. The fact that their witness testified he was not moving at the time he was hobbled. The fact that they knew his head was bleeding and he had a head injury. The fact that they kept him down for two more minutes. First prone restraint after he was hobbled. When their own directive said you immediately sit him up or put him on their side. The fact that he went unconscious for 11 or 12 minutes. And the paramedics were on scene. And then they revive him and in one or two seconds. This is all undisputed and on video. They put him back down prone for three minutes. He's crying out for help. You can hear him gasping for air on video. Richmond, who's 250 pounds, has both knees on his back. And Hunt, who's 235 pounds, has his knees and his hands holding him down again. And the last 30 seconds, Judge Hamilton, he's not making any sounds. He's not moving. And obviously he becomes unresponsive. And that was the fatal event. Although he didn't die for five years later. But the jury. Five days later. The jury could see the holding him in the prone position from the dash cam on one of the black and whites, couldn't they? Exactly. That's the point I'm trying to make. Why did the district court need to interject himself?  That's what I'm trying to say, Judge Talman. I see your point. The district court's comments with respect to Officer Hunt were before he was taken to the ground. When he was before the car and he was handcuffed and they said they had to take him to the ground because he was trying to attack them, the district court could not understand that because they were saying that he was doing all these things that you didn't see on the video. And of course, a possible explanation is you can only see him from the waist up at that point. But later the officers admitted he never landed a kick. But beyond that, once we get beyond that to the central issue of the case was the prone restraint. And the prone restraint after he was handcuffed. And what was his cause of death. And whether they had proper training. And what were damages. And the point I'm trying to make, Judge Hamilton, the judge never asked one question about any of those ultimate issues. And in fact, I think it's 16 pages out of about a 700 page transcript, 2% or so. I get what you're saying. Do you think if this had been a criminal trial of the officer's conduct that a conviction could be sustained? I think yes. But I'm not a specialist in appellate criminal law work. But I did notice, Judge Hamilton, in reviewing the cases, they suggest the standard is very stringent. Even more stringent in a civil context than a criminal context. And maybe that's why in the last 50 years or so there's only one case from 49 years ago that's jury verdict. And I also want to address the points you made earlier, Judge Hamilton, about the failure to object. And I think Judge Tallman touched base on this. There were no objections at all. Not until the end, right? And at the end, just so we're clear, if you read it carefully, that's all the objection was. It wasn't even about the in the bag reference. The objection was, we think the judge should not have been commenting on the video. That was the only basis of the motion for mistrial. You're a veteran trial lawyer. And you may have run into judges who showed, you thought, bias against you. I've been on both sides of that. Right. What do you think the standard should be for preserving these sorts of claims for judicial, for biased judicial intervention in the trial? It's a very tough problem for counsel. It is difficult. But I think at a minimum, even outside the presence of the jury at the next break, if not at the time, I think it's very important to make the objection for the record for two reasons. First of all, the trial's still going on. Much of this could be cured with additional questioning, calling the witness back. The judge always allowed the witnesses to answer questions. It also, quite frankly, alerts the judge to say, hey, judge, you know, we don't think that was appropriate. Now, maybe the judge will agree or not agree, but at least the record is preserved in each side. There's none of that discussion outside the presence of the jury. I mean, everything that we're reviewing here happened so that the jury heard and saw it. Well, just so we're clear, the motion for the mistrial was made outside the presence. Right. But the comments were made in the presence of the jury. The comments, of course. The conduct of the court. Of course. So either you'd have to make the objection, and as a trial lawyer, I know it's a little, you know, tentative to object to the judge's questioning. I totally get that. Or during ask to approach, that's another thing you can do so you're not doing that in front of the jury. Or at the next break, I think the objections have to be made to be preserved. Here, they quite frankly weren't. Really, the plain air standard would apply, as I understand it, if you don't make an objection. And honestly, I'm not even so sure how well that was developed in their opening brief. But that's for you to decide. Counsel, you're almost done, and you haven't addressed the remitted or issue. Yes. Let me do that. Oh. We believe, I'm not even sure the remitted or issue has been properly preserved, but assuming it has, there was substantial evidence to support the damages. What about the, let's just cut to the chase issue. What about the damages to the daughter who had not had contact with the father, didn't attend the funeral according to opposing counsel, and wasn't even aware of his present circumstances? How is that justified? Well, I think the characterization wasn't quite accurate. So the daughter was present for the trial, Judge Rollinson, and testified. And she testified about frequent communication with her father. We tried to put some of these sites in the record about how her father would tell her how proud he was of her, always encourage her. She was planning on going to see him soon. Did she say when the last time was that she had seen him? I think it had been something like seven years since she had seen him. However, she had talked to him frequently on the phone, and they kept in touch. And it's true that he fell on hard times. And it's true that might have been part of the reason they, she was unaware of his homeless status in the last months or year or so of his life. But the wrongful death award, Judge Rollinson, was for from the date of the death to the time and for future, and having the loss of her father. And you know, sometimes there is a separation between parents. So they talk, and she was in another state, and they don't see each other. I thought she hadn't seen him since she was eight years old. Right, I believe that, I'm trying to remember, that could be correct. Yeah, I didn't see any other names.  But the point- How old was she when she testified at the trial? I don't remember exactly, early 20s. But I do know, and I saw this in the brief, there was testimony about frequent phone conversations. She testified to weekly phone calls. Yes, thank you, Judge Hamilton. So, you know, and then we cited other, you know, verdicts for survival damages, wrongful death damages. Quite frankly, $1.5 million for the loss of a father, even under these circumstances, I don't think can be said to be excessive as a matter of law, especially with weekly phone conversations. And it's a very sad situation. Do you have any other questions on that? All right, thank you, counsel. Thank you all very much. Thank you. We have one minute for rebuttal. Your Honor, I'd like to just read from Judge Randy Smith's concurring opinion in the Cratchman case where he questioned this particular judicial officer's handling of that jury trial. Well, counsel, that's fine for you to do that, but you realize this is not a majority. So this is just one judge's view, and the other two judges did not share that. Well, the... That's what a concurrency is. This is just a single judge's view. We're familiar with you. Yeah. Okay. We read it. The city here is not asking for a judgment in favor of the city. We're simply asking for a new trial, a fair trial. All right. Is there any chance that you guys could settle this case if we referred you to mediation before we made a decision? Certainly, there's a chance. Well, let me hear from the winner here. Counsel? We are always open to having discussions to try and resolve the case. That may be a viable option. Yeah. I mean, we can issue an order basically taking the case under submission and give you folks a little bit of time to see if you can meet and confer and resolve it. Of course. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. Good suggestion. The case just argued is submitted for decision by the court.
judges: TALLMAN, RAWLINSON, Hamilton